USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 05/16/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re

AMR CORPORATION, *et al.*,

        Debtors.

---

LAWRENCE M. MEADOWS,

        Appellant,

v.

AMR CORPORATION,

        Appellee.

No. 18-CV-6149 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

Lawrence Meadows, proceeding *pro se*, appeals from two orders of the Bankruptcy Court for the Southern District of New York, which, *inter alia*, approved a settlement agreement between AMR Corporation and its affiliated debtors (collectively, "AMR" or "Debtors") and the Equal Employment Opportunity Commission ("EEOC"). For the following reasons, Meadows' appeal is dismissed.

## BACKGROUND

The Court draws the following facts from documents included in AMR's Appendix ("App."), Dkts. 11-1–11-6.

*Meadows' Proceedings Against AMR*

Meadows was employed as a pilot by American Airlines—which is a subsidiary of AMR—from 1991 to 2011. App. at 15–16. He received long-term disability benefits from American from 2004 through December 2007. *Id.* at 16. The termination of his benefits was upheld in an

administrative appeals process. *Id.* Meadows was later placed on unpaid sick leave and was ultimately terminated in October 2011. *Id.*

Meadows then initiated multiple proceedings in connection with the termination of his employment and disability benefits. In 2008, he sought review of the termination of his disability benefits with the Pension Benefit Administrative Committee, which upheld the denial of benefits. *Id.* In 2010, he sued American Airlines in Florida district court, seeking recovery of his benefits. The district court granted summary judgment in American Airlines' favor, a ruling that was affirmed by the Eleventh Circuit. *Id.* at 17; *see Meadows v. American Airlines, Inc.*, No. 10-CV-22175 (CMA), 2011 WL 1102774 (S.D. Fla. Mar. 24, 2011), *aff'd*, 520 F. App'x 787 (11th Cir. 2013). Meadows also filed an OSHA complaint under the Sarbanes-Oxley Act, alleging that AMR retaliated against him for reporting corporate fraud by threatening to terminate him. App. at 17–18. The Department of Labor, however, found no reasonable cause to believe that AMR had violated the Act. *Id.* at 18.

Meadows additionally filed a grievance pursuant to a collective bargaining agreement between American Airlines-employed pilots and AMR. *Id.* In that proceeding, he sought to grieve "improper assertions and actions" with respect to his employment status, seniority, and discharge. *Id.* at 18–19. Meadows' grievance was included within a larger proof of claim filed in the bankruptcy court by the Allied Pilots Association ("APA"), which is Meadows' collective bargaining representative. *Id.* at 19. Although the APA settled its proof of claim, there is some ambiguity in the record as to the status of Meadows' grievance following that settlement. *Compare id.* ("Mr. Meadows'[] Grievance 12-011 was . . . excluded from the APA settlement. In March of 2014, the APA filed an amended claim that excluded Grievance 12-011 from the list of grievances that were carved out of the settlement. In sum, the APA amended claim operated to extinguish Grievance 12-011 by including it in the settlement, or at least that is how it appears.") (citations omitted), *with id.*

at 20 ("Counsel for AMR confirmed that the process of fully litigating Grievance 12-011, including [a pending lawsuit to compel arbitration], is unaffected by the debtors' objection . . . [and] is on a separate track.") *and* Oral Argument Transcript at 3:6–11 (Meadows describing Grievance 12-011 as "open and pending").

Finally, in September 2012, Meadows filed an EEOC charge of discrimination against American Airlines. MOL at 14.[1]

In 2011, AMR entered bankruptcy proceedings in the Southern District of New York. Meadows filed four proofs of claim, to which AMR objected. App. at 15, 20.[2] Meadows' first proof of claim was for the termination of his long-term disability benefits, which had occurred in 2007; his three others proofs of claim related to actions that occurred in 2011 and later, including his termination and removal from the pilot seniority list. *Id.* at 21–22. In October 2014, the bankruptcy court granted AMR's objection to Meadows' first proof of claim on the ground that the subject of that proof of claim—Meadows' long-term disability benefits—had been fully resolved against him through the Florida litigation. *Id.* at 24–25. The court also disallowed Meadows' three other proofs of claims as untimely. *Id.* at 34. Meadows appealed the timeliness ruling, which the district court and the Second Circuit affirmed. *Meadows v. AMR Corp.*, 539 B.R. 246 (S.D.N.Y. 2015), *aff'd*, 662 F. App'x 77 (2d Cir. 2016).

AMR's bankruptcy plan was confirmed in October 2013 with an effective date of December 9, 2013. App. at 178. In May 2015, the bankruptcy court granted Debtors' motion to enforce the bankruptcy plan and confirmation order against Meadows—specifically, by enjoining him from

---

[1] Although not relevant here, Meadows has also filed "an SEC whistleblower complaint, alleging security fraud, and a[n additional] . . . grievance based on a right of special assignment to a non-flying position." App. at 21.

[2] As noted above, AMR's objections did not request any relief regarding Meadows' ability to continue with Grievance 12-011. App. at 20–21.

commencing or continuing any action against Debtors for conduct or claims that arose before the commencement of the bankruptcy proceedings. *Id.* at 35–39. The district court and the Second Circuit affirmed that ruling. *See In re AMR Corp.*, 764 F. App'x 88, 89 (2d Cir. 2019).

*The Consent Decree with the EEOC and the 9019(a) Settlement*

Around 2009, the EEOC began to investigate American Airlines' reasonable accommodations practices in response to discrimination charges that had been filed by current or former employees—none of whom were Meadows. App. at 61. At some point as a result of that investigation, the EEOC filed a Charge of Discrimination; in 2012, it filed a proof of claim against AMR in the bankruptcy court connected to that Charge of Discrimination. *Id.* at 124. In 2017, the EEOC also sued American Airlines in the Arizona district court, asserting ADA violations and seeking relief for the individual charging parties (again, none of whom were Meadows). *Id.* at 59–67.

The same day the EEOC filed suit, the parties submitted for the district court's approval a proposed consent decree. *Id.* at 89–90. Under the consent decree, in exchange for resolving the EEOC's claims and the claims of the individual charging parties, the EEOC was deemed to hold an "allowed American general unsecured claim" for $9.8 million, which was to be distributed to the charging parties and other potential aggrieved employees. *Id.* at 91–93. The consent decree provided that the claims process was open to all former and current American Airlines employees who believed they were discriminated against during the period of January 1, 2009 through August 3, 2015. *Id.* at 119. A group of employees that the parties determined were most likely to be aggrieved employees were affirmatively notified of the settlement. *Id.* at 96–97. This group of notified employees did not include pilots because pilots' fitness for duty is governed by FAA regulations such that they are not subject to the reasonable-accommodation policies and procedures that were at issue in the EEOC's investigation. That said, pilots were not precluded from filing a claim if they learned of the settlement

4

through other means, such as through the publicly available website and toll-free number regarding the settlement. *See id.* at 96.

The Arizona district court adopted the consent decree as the final judgment in the case. *Id.* at 138. Because the monetary relief in the consent decree came from a disputed claims reserve that had been created through Debtors' bankruptcy, however, the decree could not become effective without bankruptcy court approval. Debtors accordingly moved in the bankruptcy court for entry of an order, pursuant to Federal Rule of Bankruptcy Procedure 9019(a), approving the settlement of (1) the EEOC's proof of claim and (2) the proofs of claim of three other individuals covered by the consent decree—none of whom were Meadows. *Id.* at 177–96.

Meadows filed an objection to the proposed settlement agreement. *Id.* at 248. Most of Meadows' arguments challenged the substance of the consent decree, as opposed to the proposed settlement between Debtors and the four claimants. He principally argued that: the consent decree was prejudicial to all creditors and shareholders of Debtors because it used bankruptcy estate assets to pay claims for conduct falling outside the bankruptcy protection period; the consent decree was prejudicial to aggrieved pilots because it excluded them from the settlement; the consent decree violated the principle of equality within a class of creditors; and the consent decree was the product of fraud or collusion as evidenced by its purported exclusion of pilots. *Id.* at 251–63.

The bankruptcy court held a hearing on Debtors' motion on February 1, 2018, at which it overruled Meadows' objections and approved the settlement agreement from the bench. *Id.* at 306. The court found that the settlement "satisfie[d] the requirements of Rule 9019 applicable caselaw." *Id.* It further stated:

> I'd also want to make it very, very clear that this settlement does not in any way dismiss, waive, or otherwise affect anybody other—anybody else's rights other than those in the settlement. The parties whose rights are affected are the parties who filed proofs of claims and have decided to settle those proofs of claims or the

5

> folks who are part of the consent decree who can participate in the settlement, but only if they so choose by filing the procedures set forth in the consent decree. If they choose not to do that, then they are not waiving any of their claims.

*Id.* at 307; *see id.* at 301–02 (clarifying that the settlement did not "provide for the exclusion of" any person's claims against Debtors, "within the bankruptcy or otherwise," unless that person decided to participate in the EEOC settlement by submitting a claim). This finding was reiterated specifically with respect to Meadows' claims. *Id.* at 308 ("Mr. Meadows has claims . . . [b]ut they are not affected by any of this.").

The court also confirmed that the claims being settled through the consent decree were related to pre-petition conduct only. *Id.* at 274–75 (Debtors' counsel explaining that "the charging time is from 2009, well before the bankruptcy and through conduct that occurred before that time"). And, reviewing the settlement agreement and consent decree, the court found that "it's pretty clear that the pilots are not excluded from the settlement" and that "they can participate if they so choose." *Id.* at 308. The court did, however, direct Debtors and the EEOC to work together to ensure that the information on the settlement's public website, the notice of settlement, and the associated frequently asked questions page all made clear that pilots were not excluded from the settlement agreement. *Id.* at 308–09.

*Proceedings Following the Bankruptcy Court's Oral Ruling*

Following the bankruptcy court's oral ruling, the EEOC and Debtors moved in the Arizona district court for entry of an amended consent decree; the proposed amended decree would have included pilots in the list of employees who would receive notice. *Id.* at 317–20. Meadows moved to intervene in that case and objected to the motion. *Id.* at 381–402. At the same time, the EEOC and Debtors moved in the bankruptcy court for approval of the proposed amended consent decree.

6

*Id.* at 436. Meadows filed objections and responses to that motion, arguing that pilots were still excluded from the settlement even under the proposed amended consent decree. *Id.* at 521–43.

On April 24, 2018, the Arizona district court denied approval of the amended consent decree, concluding that the parties had failed to present grounds for disregarding the court's prior judgment under Federal Rule of Civil Procedure 60(b). *Id.* at 545–47. The district court also denied Meadows' motion to intervene, as well as his subsequent motions for reconsideration and clarification. *Id.* at 547–48, 590, 594–95. On May 3, 2018, the EEOC and Debtors withdrew their motion to the bankruptcy court to approve the proposed amended consent decree and renewed their request to approve the original consent decree. *Id.* at 549–50.

On May 16, 2018, the bankruptcy court issued an order approving the settlement agreement for the reasons stated on the record at the February 1 hearing. *Id.* at 433–35. In that order, the court directed "the Parties to the Consent Decree [to] clarify in the Notice of Settlement and on the website contemplated by section 22(a) of the Consent Decree that the Consent Decree does not exclude pilots from the settlement (by revising the frequently asked questions about the claims process to be distributed and/or posted)." *Id.* at 434.

Also on May 16, 2018, Meadows filed an objection to Debtors' renewed motion to approve the consent decree; this objection was, however, not received by the bankruptcy court until after it had issued its May 16 order. *Id.* at 597–618, 651–52. Meadows contended that he had never received Debtors' May 3 letter withdrawing their motion for approval of the amended consent decree and seeking approval of the original consent decree. *Id.* at 602. He also argued that the bankruptcy court was collaterally estopped from modifying the original consent decree or its exhibits by directing edits to the notice of settlement and the "frequently asked questions" page. *Id.* at 606–08. The remainder of Meadows' motion repeated his earlier challenges to the original consent decree, including his

argument that pilots were excluded from the consent decree and that the consent decree improperly used bankruptcy estate assets to pay post-petition claims.

On May 29, 2018, Meadows moved the bankruptcy court to strike the May 16 order, to stay proceedings pending the resolution of all post-judgment motions and/or appeals in the Arizona court, and for a new trial or amended judgment of the bankruptcy court's May 16 order. *Id.* at 620–49. This motion reiterated the arguments Meadows made in his May 16 motion, and further argued that Meadows was deprived of his due process rights as a result of Debtors' failure to provide him notice of the May 3 letter. *Id.* at 631–34.

On June 1, 2018, the bankruptcy court denied Meadows' two motions. *Id.* at 651. The court found them to be not only "without merit" but also moot to the extent they complained about the proposed amended consent decree. *Id.* at 652. The court further concluded that any objections raised to the original consent decree "ha[d] already been considered and ruled upon" at the February 1 hearing. *Id.* Although it found the issues of improper service Meadows had raised with respect to the May 3 letter to be "unfortunate," it concluded that Meadows' "rights were not adversely affected" because he had clearly received and responded to that letter, and his responses had been fully considered. *Id.*

*Proceedings in this Court*

Meadows, proceeding *pro se*, has appealed both the bankruptcy court's May 16, 2018 order and its June 1, 2018 order. His appeal renews the arguments made to the bankruptcy court in his objections to the settlement agreement. In addition, he argues that the bankruptcy court deprived him of his due process rights. The Court heard oral argument on February 17, 2022.

8

**LEGAL STANDARD**

District courts have appellate jurisdiction over "final judgments, orders, and decrees" of bankruptcy courts under 28 U.S.C. § 158(a)(1). A district court reviews a bankruptcy court's findings of fact for clear error and reviews conclusions of law *de novo*. *See In re Bayshore Wire Prods. Corp.*, 209 F.3d 100, 103 (2d Cir. 2000). "Mixed questions of fact and law are subject to *de novo* review." *In re Vebeliunas*, 332 F.3d 85, 90 (2d Cir. 2003). "A finding of fact is clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Lehman Bros. Holdings Inc.*, 855 F.3d 459, 469 (2d Cir. 2017).[3] "Harmless error, meaning an error not inconsistent with substantial justice or that does not affect the parties' substantial rights, is not grounds for reversal." *In re Residential Capital, LLC*, 563 B.R. 477, 485 (S.D.N.Y. 2016).

"Matters left to the [bankruptcy] court's discretion," such as the approval of a settlement under Rule 9019, "are reviewed for abuse of discretion." *In re Adelphia Commc'ns Corp.*, 342 B.R. 122, 126 (S.D.N.Y. 2006); *see In re Soup Kitchen Int'l Inc.*, 506 B.R. 29, 37 (Bankr. E.D.N.Y. 2014). This Court will find an abuse of discretion only if the bankruptcy court's "ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *In re Soundview Elite Ltd.*, 646 F. App'x 1, 1 (2d Cir. 2016). In particular, a "decision to approve a settlement is reviewed extremely deferentially." *In re Schneider*, No. 14-CV-1166 (JMA), 2015 WL 1412364, at *3 (E.D.N.Y. Mar. 26, 2015). "The reviewing court need not make its own investigation into the reasonableness of the settlement. Instead, it should only canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re Ashford Hotels, Ltd.*, 235 B.R. 734, 739 (S.D.N.Y. 1999).

---

[3] Unless otherwise noted, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

Finally, pleadings by *pro se* litigants "must be construed liberally" and read "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted); *see In re Motor Liquidation Co.*, No. 11-CV-7893 (DLC), 2012 WL 398640, at *2 (S.D.N.Y. Feb. 7, 2012) (applying this principle to a *pro se* bankruptcy appellant).

## DISCUSSION

**I.     Meadows Lacks Appellate Standing**

AMR's threshold argument is that Meadows has no standing to appeal the orders approving the settlement agreement. The Court agrees.

"[I]n order to have standing to appeal from a bankruptcy court ruling, an appellant must be a person aggrieved"—that is, "a person directly and adversely affected pecuniarily by the challenged order." *In re DBSD N. Am., Inc.*, 634 F.3d 79, 89 (2d Cir. 2011); *see In re Lehman Bros. Holdings, Inc.*, No. 19-CV-6397 (PAE), 2020 WL 1503473, at *1 (S.D.N.Y. Mar. 30, 2020) (explaining that an "appellant cannot proceed with an appeal if they cannot demonstrate that they suffered a direct financial injury as a result of the Order"). "Potential harm from a bankruptcy court order is insufficient to confer appellate standing." *In re Barnet*, 737 F.3d 238, 243 (2d Cir. 2013). "[I]n addition to satisfying the aggrieved person standard, an appellant must also establish prudential standing, meaning that the appellant must assert his own legal rights and not those of third parties." *Lehman Bros.*, 2020 WL 1503473, at *1.

Meadows has not adequately demonstrated personal and direct pecuniary harm arising from the bankruptcy court's orders, either as a creditor or as a shareholder.[4]

"Creditors ordinarily have standing to appeal bankruptcy court orders that make a disposition of estate property since that sort of order directly affects the funds available to meet their claims." *In*

---

[4] To the extent Meadows raises issues on behalf of other "similarly situated" pilots, *see* MOL at 6, he lacks standing to do so, *see Lehman Bros.*, 2020 WL 1503473, at *1.

10

re Gucci, 126 F.3d 380, 388 (2d Cir. 1997).  But all of Meadows' claims have been disallowed by the bankruptcy court, a ruling that was affirmed by the district court and the Second Circuit.  Indeed, Meadows appeared to confirm at argument that he "personally do[es] not believe" he has any pending proofs of claim.  Argument Transcript at 6:19.  This deprives him of creditor appellate standing.  *See Bartel v. Bar Harbor Airways, Inc.*, 196 B.R. 268, 271 (S.D.N.Y. 1996) ("Because this Court has affirmed the Bankruptcy Court's disallowance of the appellant's claim, the appellant cannot show that he is a person aggrieved."); *In re DBSD*, 634 F.3d at 91 (explaining that "[t]here is all the difference in the world between a claim that has already been disallowed by the bankruptcy court" and one "that remains allowed and pending" for purposes of creditor standing).[5]

Meadows has also failed to establish shareholder standing.  An equity shareholder of a debtor, as Meadows asserts to be, has standing to challenge a bankruptcy court order only if he is "directly and adversely affected pecuniarily."  *See Freeman v. J. Reg. Co.*, 452 B.R. 367, 371 (S.D.N.Y. 2010).  At argument, Meadows explained that he believes that the settlement agreement will have an adverse effect on the final distributions on equity payouts to shareholders.  Argument Transcript at 20:17–21:7.  This concern, which is unsupported by any evidence in the record, is too speculative to confer standing.  *In re Barnet*, 737 F.3d at 243 (stating that mere "[p]otential harm" cannot satisfy the pecuniary harm test).

Accordingly, the Court finds that Meadows lacks standing to appeal the bankruptcy court's two orders.[6]

---

[5] The EEOC proof of claim does not vest Meadows with creditor standing merely because he might be an aggrieved individual as that term is used in the Consent Decree—again, Meadows must be personally pecuniarily affected, and that pecuniary harm must be actual rather than potential.

[6] On March 2, 2022, Meadows filed a supplemental submission, styled as a request for judicial notice, in which he asserted that prior orders of the bankruptcy court did not question his standing to bring motions and raise objections in that court. But being a "party in interest" in the bankruptcy court, which generally confers standing to raise objections in that court, is not equivalent to standing to appeal a bankruptcy court order.  *See In re Refco Inc.*, 505 F.3d 109, 116–20 (2d Cir.

**II.      Even If Meadows Had Appellate Standing, His Claims Would Fail on the Merits**

Although the Court is of the position that Meadows does not have appellate standing, it recognizes that there are some aspects of the record which could be read to suggest that Meadows has or had proofs of claim other than those that were successfully objected to or disallowed. *See, e.g.*, App. at 305, 308 (February 1, 2018 hearing in which the bankruptcy court mentioned Meadows' claims "which have been litigated in this Court and are on appeal" and described those claims in the present tense). The Court also notes that the record in this case in general is less clear than it might be with respect to Meadows' various claims and the details of his shareholder status. Accordingly, to the extent Meadows might arguably have creditor or shareholder standing—or might have standing based on his individual grievance—the Court will undertake a merits analysis out of an abundance of caution. Upon such undertaking it concludes that, even if Meadows had appellate standing, his challenge to the bankruptcy court's approval of the settlement agreement would fail on the merits.

"A court may approve a settlement under Bankruptcy Rule 9019 if it is fair and equitable and in the best interests of the estate." *In re Sabine Oil & Gas Corp.*, 555 B.R. 180, 256 (Bankr. S.D.N.Y. 2016). The Second Circuit has established a multi-factor test governing approval of a settlement agreement under Rule 9019(a). Those factors are:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment; (3) the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement; (4) whether other parties in interest support the settlement; (5) the competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy court judge reviewing, the settlement; (6) the nature and breadth of releases to be obtained by officers and directors; and (7) the extent to which the settlement is the product of arm's length bargaining.

---

2007) (distinguishing party-in-interest standing from appellate standing); *accord In re Salant Corp.*, 176 B.R. 131, 134 (S.D.N.Y. 1994) ("[M]erely being a party in interest is insufficient to confer appellate standing.").

*In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007). "[A] bankruptcy judge need not decide the numerous questions of law and fact raised by the settlement, but rather, should canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re E. 44th Realty, LLC*, No. 05-BR-16167, 2008 WL 217103, at *8 (S.D.N.Y. Jan. 23, 2008). Nor must a settlement "be the best that the debtor could have obtained" to be approved. *In re Sabine*, 555 B.R. at 257.

Meadows' primary challenge to the settlement agreement is that pilots are excluded from the consent decree. Putting aside the potentially improper conflation of the consent decree with the settlement agreement,[7] the Court agrees with the bankruptcy court that this argument is factually mistaken. There is no reasonable reading of the consent decree by which it excluded pilots from submitting a claim. Although pilots were not included in the list of potentially aggrieved employees who were to receive *notice* of the settlement, no part of the consent decree precluded them from submitting a claim if they learned of the settlement, so long as they met the requirement of being current or former American Airlines employees who believed that they were discriminated or retaliated against between January 1, 2009 and August 3, 2015. *See* App. at 306–07 (bankruptcy court's findings); *id.* at 89–110 (consent decree); *id.* at 119–20 (frequently asked questions page stating that the claims process was open to "former/current American . . . employees who believe they were discriminated and/or retaliated against").

Meadows' other objections appear to implicate the third and fourth *Iridium* factors, as he argues that the settlement is not in the estate's best interests because it pays for post-petition conduct, and the seventh factor, as he argues that the settlement agreement is the product of collusion. Neither of these arguments have merit.

---

[7] As the bankruptcy court clarified at the February 1 hearing, its task was "not [to] approv[e] the consent decree," but rather to decide whether to "approv[e] the 9019 settlement." App. at 306.

13

First, Meadows contends that the settlement agreement improperly uses bankruptcy estate funds to pay for post-petition and post-effective-date claims. *See* App. at 119 (frequently asked questions page explaining that the claims process is open to employees who may have been discriminated against "during the period January 1, 2009 through August 3, 2015"). But the only proofs of claim that were settled by the agreement are four pre-petition claims, including the EEOC's pre-petition proof of claim. App. at 189–96 (exhibits to Debtors' motion to approve attaching the four specific proofs of claim to be settled, one by Darla Alvarado, one by Sherrie Redd, one by Micah Peterson, and one by the EEOC).[8]

Second, Meadows argues that the exclusion of pilots from the settlement is evidence of collusion. "The best interests standard under Bankruptcy Rule 9019 contemplates a determination by the bankruptcy court as to whether the proposed settlement was negotiated in good faith." *In re Lehman Bros. Holdings Inc.*, 435 B.R. 122, 135 (S.D.N.Y.), *aff'd sub nom. Suncal Communities I LLC v. Lehman Com. Paper, Inc.*, 402 F. App'x 634 (2d Cir. 2010). The Court agrees with the bankruptcy court's finding that there is "no evidence of fraud or collusion" in this case. App. at 306. As noted above, American Airlines pilots are not excluded from the settlement. And while they are excluded from the list of employees who are noticed of the settlement, Debtors' explanation for this— that pilots' fitness for duty is governed by FAA regulations and thus not subject to the specific accommodations process that the EEOC was investigating, *id.* at 297–98—is reasonable and not suggestive of a pretense for collusion.[9]

---

[8] At argument, counsel for Debtors explained that certain statements in the February 1 hearing transcript by the bankruptcy court in which the court appeared to describe "post-petition" claims, App. at 307, 309, contained typographical errors. Argument Transcript at 18:13–18. Reviewing the record as a whole, the Court agrees with this characterization.

[9] Meadows' argument that the bankruptcy court is collaterally estopped from modifying the consent decree rests on a mistaken factual premise. The bankruptcy court's instruction to Debtors to edit the settlement website, notice of settlement, and frequently asked questions page did not modify the consent decree that was approved by the Arizona district court, because those three documents are not part of the consent decree. Indeed, in the order that directed Debtors

14

The Court finds no other errors in the bankruptcy court's approval of the settlement agreement and agrees that it is fair and equitable under the Second Circuit's standards. Accordingly, it sees no basis to disturb the approval of the settlement agreement.

Apart from his challenges to the settlement agreement itself, Meadows also argues that his due process rights were violated based on his lack of notice of certain filings[10] and based on the bankruptcy court's entry of the May 16 order approving the settlement agreement. Even assuming Meadows had the right to notice of these filings, his argument is without merit. Meadows was clearly on notice of Debtors' initial Rule 9019(a) motion, as he filed timely objections and appeared at the February 1 hearing, at which he was given a full opportunity to be heard. The May 16 order merely memorialized the oral ruling that was issued during that hearing. Meadows was also clearly on notice of Debtors' (subsequently withdrawn) motion for approval of the amended consent decree, as he filed objections to that motion as well. To be sure, it appears that Meadows was not properly noticed of Debtors' May 3 letter withdrawing the request to approve the amended settlement agreement and renewing the request to approve the original agreement, and did not learn of that letter until May 14. But any failure in such notice was harmless: Meadows filed multiple briefs in response to the May 3 letter, both of which the bankruptcy court reviewed and ruled on. More importantly, the May 3 letter simply requested approval of the same settlement agreement that the bankruptcy court had already approved during the February 1 hearing—Meadows thus cannot claim unfair surprise based on not having seen that letter. In short, Meadows was not deprived of notice or the opportunity to be heard at any point; even if he was, any such error in this regard would be harmless. *See In re Adler, Coleman*

---

to make these edits, the court stated that "the Consent decree in the form submitted to this Court on December 15, 2017 is approved *in its entirety*." App. at 434 (emphasis added)

[10] As part of this argument, Meadows discusses his purported lack of notice of certain filings in the Arizona district court. Any notice issues in that court, however, are not relevant to the appeal before this Court.

*Clearing Corp.*, 204 B.R. 99, 106 (Bankr. S.D.N.Y. 1997) ("An error is harmless if it . . . does not affect the substantial rights of the parties.").

Meadows' overarching concern appears to be that approval of the settlement agreement, and specifically settlement of the EEOC's proof of claim, will "extinguish" his rights by precluding him from bringing or maintaining other claims, both within and without the bankruptcy. Although Meadows' concern with preserving his rights is understandable, this Court agrees in full with the finding of the bankruptcy court the settlement agreement does not preclude or extinguish any of Meadows' existing rights to maintain or pursue separate claims.[11] To the contrary, Meadows lost no legal rights that he may (or may not) have had before the approval of the settlement agreement as a result of that approval.

## CONCLUSION

For the foregoing reasons, Meadows' appeal is dismissed. The Clerk of Court is respectfully directed to terminate the item pending at docket number 18, mail a copy of this order to Meadows, and close this case.

SO ORDERED.

Dated:   May 16, 2022
         New York, New York

_____
Ronnie Abrams
United States District Judge

---

[11] Meadows argues that settlement of the EEOC's proof of claim "permanently and prejudicially deprive[s]" him and other pilots "of their ability to piggyback on" that claim. MOL at 42. The Bankruptcy Rules, however, require a putative unsecured creditor or his authorized agent to file his own proof of claim, and do not create an exception to the timely filing requirements by virtue of an earlier claim. *See* Fed. R. Bankr. P. 3001(b); *id.* 3002(a), (c); *id.* 3003(c)(3). Accordingly, the EEOC's proof of claim never could have permitted any "piggybacking" by Meadows.